QUESTIONS: 1. May a public officer expend the public funds of his or her office for pictures of himself or herself for dissemination to other officers and employees and persons in the public and private sector, in the absence of express statutory authority? 2. If by necessary implications based upon the statutory duties of his office said officer is authorized to bear such expense from the public funds of his office, then what type justification should be entered into the public records of his office in order to afford sufficient information that such expense is necessary for the operation of his or her office and in the public interest?
SUMMARY: In the absence of legislative authority, express or necessarily implied, and funds properly appropriated or budgeted for the purpose, an officer of the state, a county, or a special district should not use public funds to purchase and disseminate hundreds of photographs of himself to his employees and to private individuals. As the public purpose to be served by such an expenditure is not readily apparent, a voucher requesting the release of public funds for that purpose should point out specifically the legislation relied upon as authority for the expenditure and, if the authority must be implied, why such an expenditure is necessary in order to carry out an express legislative duty or function. AS TO QUESTION 1: As municipal charters and ordinances adopted thereunder pursuant to Art. VIII, s. 2, State Const., and the Municipal Home Rule Powers Act, s.166.021, F.S., may differ widely insofar as the budgeting and expenditures of municipal funds for various municipal purposes are concerned, your questions are answered only as they relate to the expenditures of public funds by state, county, and district officers. See, however, Art. VII, s. 10, State Const., prohibiting cities as well as the state, counties, special districts "or agency or any of them" from giving or lending their taxing power or credit to aid any private corporation or individual; and City of Daytona Beach v. King, 181 So. 1 (Fla. 1938), discussing generally the question of the authority of a city to spend municipal funds or levy a municipal tax for a purely private purpose. It has been many times reiterated in court decisions, text authorities, and opinions of this office that public funds may be spent only for a public purpose or function which the public body is expressly authorized by law to carry out or which must necessarily be implied in order to carry out the purpose or function expressly authorized. See 81 C.J.S. States s. 167, p. 1226; 20 C.J.S. Counties ss. 129 and 207, pp. 941 and 1052, respectively; Davis v. Keen, 192 So. 200 (Fla. 1939); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); O'Neill v. Burns,198 So.2d 1 (Fla. 1967); Florida Development Comm. v. Dickinson,229 So.2d 6 (1 D.C.A. Fla., 1969); and AGO 071-28 as to expenditures of state and county funds. Accord: Attorney General Opinion 068-12 as to the expenditure of special-district funds. It is also well settled that, if there is a reasonable doubt as to the lawful existence of a particular power which is being exercised, the further exercise of the power "should be arrested." State ex rel. Greenberg v. Florida State Bd. of Dent.,297 So.2d 628, 636 (1 D.C.A. Fla., 1974), citing State v. Atlantic Coast Line Railroad Company, 47 So. 969; Edgerton v. International Company, 89 So.2d 488 (Fla. 1956). Accord: Crandon v. Hazlett,26 So.2d 638, 642 (Fla. 1946); Hopkins v. Special Road Bridge Dist. No. 4, 74 So. 310 (Fla. 1917), as to counties; and AGO's 069-130 and 074-169 as to special districts. State funds may be disbursed only pursuant to an appropriation made by law, Art. VII, s. 1(c), State Const., and in accordance with the procedures prescribed by Ch. 216, F.S., or other specific legislative authority. And expenditures of county funds budgeted in accordance with the requirements of Ch. 129, F.S., must adhere strictly to and be released only in conformity with the requirements of that act. See also s. 218.34, F.S., requiring special districts to prepare annual budgets. As noted in AGO 068-12, supra, these district budgets are comparable to legislative appropriations made under and pursuant to Art. IX, s. 4, State Const. 1885 (Art. VII, s. 1[c], State Const. 1968, supra). Similarly, county fee officers are now required to prepare annual budgets and file them with the clerk of the county governing authority by September 1 preceding the budgetary fiscal year, s. 218.35; and each county officer, whether a fee or a budget officer, must file a sworn statement showing the receipts and disbursements of the office during the preceding year, specifying in detail "the purposes, character, and amount of all official expenses and the amount of net income or unexpended budget balance as of the close of the fiscal year." Section 218.36(1). All money in excess of the sum to which the county officer is entitled under Ch. 145, F.S. (the County Officers' Uniform Salary Act), must be paid into the county general fund on or before the date for the filing of the annual report referred to above. Section 218.36(2). I understand that you are not questioning the practice of providing from public funds photographs or portraits of public officials, past and present, which are displayed in their offices and other public buildings as a matter of historical or public interest. Your concern is with the printing at public expense of hundreds of photographs of a public official for distribution to all the employees of the division or department or local governmental entity headed by such an official and to any other person desiring one, either in the public or the private sector. I know of no statute or court decision which either expressly or by necessary implication authorizes this type of expenditure from public funds. Moreover, if the purpose and intent of such a gift would be solely for the personal aggrandizement, or the furtherance of the political ambitions, of the official in question, it would plainly be unauthorized. As noted above, it is basic and fundamental that public funds may be used only for public purposes. These purposes "generally are for the support of government or recognized objects of government, or for the direct promotion of the welfare of the body politic," AGO 071-28, citing 84 C.J.S. Taxation s. 15, p. 165. While the dissemination of hundreds of photographs of a public official among public employees and private citizens might be of some personal or political value to the official, any public purpose which would be served by this type of publicity is not immediately apparent. And, as stated in 81 C.J.S. States s. 134, p. 1158, Express or implied restrictions of the constitution generally prohibit the legislature of a state from making any gift to, or in aid of, individuals or corporations. In Florida, this constitutional inhibition is equally applicable to cities, counties, and special districts. Article VII, s. 10, supra. I have not overlooked my previous ruling in AGO 071-160 that the funds appropriated to the Governor's "discretionary-contingency" fund to be expended "at his discretion to promote general government and intergovernmental cooperation and to enhance the image of the state," as authorized by s. 216.231, F.S., could be used for, among others, photographs of the Governor, his wife and family, and the Lieutenant Governor when directly related to the accomplishment of one of the quoted purposes. But that ruling is not determinative of the question here presented. It was concerned with a special contingency fund appropriated to the chief executive of this state to be expended, at his discretion, for the special statutory purposes designated by the Legislature in s.216.231. As noted in AGO 071- 160, the propriety or legality of any expenditure for any of the purposes enumerated therein "must be determined on an individual basis from its own peculiar facts and circumstances at the time such activity or such expenditure is authorized or incurred by the office of the governor and within the framework structured by the interpretations and the principles of law" discussed in the opinion. In any event, the various items (including photographs) which were tentatively approved in AGO 071-160 as proper expenditures by the chief executive of the special funds appropriated for his special use for the special purposes designated in the statute, even though not specifically authorized by law, might be said to be sui generis — in a class by themselves; thus, AGO 071-160 does not constitute, and cannot be relied upon as, a precedent by a state or local official who desires to use the public funds appropriated or budgeted for the general operation of his office for any of the various items and purposes therein enumerated. As indicated above, it is difficult to conceive of a situation in which the dissemination of photographs of a public official indiscriminately to hundreds of persons in both the public and the private sector would serve a public purpose. And I have the view that the funds that have been budgeted or appropriated generally for paying the necessary expenses of a state, county, or district office in carrying out its duties or functions should not be used for gifts of this kind in the absence of statutory authority, expressly or necessarily implied. Whether there is statutory authority, express or implied, for a particular expenditure, and whether there are funds properly budgeted or appropriated which may be used for this expenditure, are questions initially for the official and ultimately, of course, for the Auditor General. Attorney General Opinion 071160, supra. AS TO QUESTION 2: The duty of a public official — whether state, county, or district — in submitting a voucher for the release of public funds to pay an authorized expenditure of his office was stated in AGO 068- 12 as follows: Vouchers for payment of public funds, whether state, district or county, submitted or to be submitted to the paying agency should contain sufficient information for the paying agency, or its preauditors or officials and the postauditor to determine whether the requested payment is authorized by law. If the expenditure is expressly authorized by law, the statutory authority should be cited unless it is apparent from the face of the voucher. If the authorization must be necessarily implied, the person issuing the voucher for payment "is obligated to cast such vouchers in such language as will indicate to the postauditor or the public the legality of such payments." Attorney General Opinion 068- 12, supra. Accord: Attorney General Opinion 071-28, citing AGO 068- 12 in support of the statement that the officer seeking to incur an obligation against the moneys of the state must find and point to a constitutional or statutory provision authorizing him to do so. Thus, if the authority is implied rather than express, the official must not only point to the statute expressly authorizing or requiring the performance of a particular duty or function but also point out why the expenditure in question is necessary in order to carry out the express duty or function. If the statements in the voucher are insufficient to show express or implied statutory authorization, the paying officer or agency "is justified in turning down the request for payment or requesting clarification." Attorney General Opinion 068-12, supra. A vendor's invoice indicating purchase of photographs or prints would clearly be inadequate, standing alone, to support the voucher.