Ernest Ellison Auditor General Tallahassee
QUESTION:
Does s. 3 of ch. 80-285, Laws of Florida, authorize district school boards to self-insure in the prescribed manner against all authorized risks, including the insurance coverages required pursuant to s. 230.23(9)(d), F. S., and State Board of Education Rule 6A-1.692(3), F.A.C.?
SUMMARY:
Section 3 of ch. 80-285, Laws of Florida, does not authorize district school boards to self-insure against all risks or to enter into risk management programs therefor and does not authorize district school boards to self-insure for the property damage insurance coverage or fidelity bond required by ss. 230.23(9)(d) and 237.191, F. S., and Rule 6A-1.692(3), F.A.C.
Your inquiry states that you noticed during postaudit that several district school boards had entered into risk management programs which include components of self-insurance, establishing self-insurance funds administered through a program of risk management. Specifically, I understand that certain boards have established an integral program of risk management, these programs covering a number of different risks including those resulting from workers' compensation claims, property damage, general liability, and employee dishonesty. Your letter points out that there exists express authority to self-insure for health, accident, and hospitalization coverage in s. 112.08, F. S.; for workers' compensation coverage in s. 440.38, F. S.; for claims arising from acts of negligence in s. 768.28, F. S.; and for civil rights actions under s. 111.072, F. S. Yet you note that you have found no prior enactments granting a district school board the authority, express or implied, to self-insure for property damageor for employee dishonesty. Thus, you inquire whether ch. 80-285, Laws of Florida, broadens the scope of a district school board's authority to permit self-insurance of all risks, including those risks covered by other preexisting statutes such as those listed above. More specifically, you inquire whether ch. 80-285 authorizes school boards to self-insure in the case of the coverage required by s. 230.23(9)(d), F. S., and Rule 6A-1.692(3), F.A.C.
Chapter 80-285, infra, does not deine `self-insurance' or `self-insurance program.' The dictionary definition of `self-insurance' is the `insurance of one's property or interests against possible loss by the establishment of a special fund for the purpose instead of seeking coverage with an underwriter,' and `self-insurer' means `one insured under self-insurance.' TheRendom House Dictionary of the English Language, Unabridged Ed. at 1294. Cf. ss. 627.356 and 627.357, F. S., as examples of self-insurance funds and integral risk management programs.
Section 3 of ch. 80-285, Laws of Florida, added subsection (5) to s. 237.211, F. S.; that subsection provides:
237.211 School depositories; payments into and withdrawals from depositors. —
 (5) EXEMPTION FOR SELF-INSURANCE PROGRAMS. — The school board is authorized to contract with an approved service organization to provide self-insurance services, including, but not limited to, the evaluation, settlement, and payment of self-insurance claims on behalf of the school board. Pursuant to such contract, the school board may advance money to the service organization to be deposited in a special checking account for paying claims against the school board under its self-insurance program. The special checking account shall be maintained in a designated district school depository. The school board may replenish such account as often as necessary upon the presentation by the service organization of documentation for claims paid equal to the amount of the requested reimbursement. Such replenishment shall be made by a warrant signed by the chairman of the board and countersigned by the superintendent.
Chapter 237, F. S., deals with `Financial Accounts and Expenditures,' and s. 237.211 deals with `School depositories; payments into and withdrawals from depositories.' Thus, this amendment to s. 237.211, which adds subsection (5), relates to financial matters and merely comprises and instruction to school boards in regard to the `proper keeping of the uniform system of financial records and accounts . . . .' Section 237.01. Section 237.211(5) does not purport to authorize the school boards to self-insure against any specific risk or claim for specific loss or damage, or to establish any self-insurance fund to insure against any such specific risk, loss, or claim for damages, and does not appear to contemplate a broad authorization to self-insure against any and all risks. Rather, it merely authorizes school boards to contract with approved service organizations for the provision of self-insurance services, in those cases in which self-insurance is allowed by law, such as provided for in ss. 111.072, 112.08, 440.38, and 768.28, F. S.
Elsewhere, and in regard to `insurance of school property,' s. 230.23(9)(d)1., F. S., specifically provides, in pertinent part:
 [The school board shall] [c]arry insurance on every school building in all school plants including contents, boilers and machinery, except buildings of three classrooms or less which are of frame construction and located in a tenth class public protection zone as defined by the Florida Inspection and Rating Bureau; and on all school buses and other property
under the control of the school board or title to which is vested in the school board, except as exceptions may be authorized under regulations of the state board. (Emphasis supplied.)
My research has revealed no administrative regulations of the State Board of Education which would except district school boards from the requirements of s. 230.23(9)(d). Additionally, I have been advised by counsel for the Department of Education that they are aware of no such regulations. `Carry' is defined in TheAmerican Heritage Dictionary of the English Language as, interalia, `to keep in one's accounts,' `to have as a customary . . . attribute or accompaniment,' or `to support or sustain the responsibility of.' `Insurance' is defined in that same dictionary as, inter alia, `a contract binding a company to indemnify an insured party against specified loss in return for premiums paid' and as `the periodical premium paid for this indemnification.'Accord: Section 624.02, F. S.
Section 230.23(9)(d)2., F. S., provides in pertinent part that `[i]n consideration of the premium at which each policy shall be written, it shall be a part of the policy contract between the company and the named insured . . . .' Thus, s. 230.23(9)(d)expressly requires school boards to `carry insurance' on school property and makes no mention of self-insurance or any provision for a self-insurance program or integral risk management program for school boards. Compare ss. 240.375 and 240.376, F. S. (as amended and created by ch. 80-285, supra), which expressly authorize self-insurance and risk management programs for community colleges. This office has previously opined that the statutory authorization for district school boards to `proceed in a particular way implies a duty not to proceed in any manner other than that which is authorized by law.' White v. Crandon,156 So. 303 (Fla. 1934), and AGO 075-256. In that opinion, my predecessor in office concluded that a statute analogous to s. 230.23(9)(d) required district school boards to provide insurance via agreement with insurance companies and, further, that that statute impliedly prohibited self-insurance. Moreover, AGO 075-256 also concluded that the powers of school boards are `limited and defined by statute and may not be extended by construction. When the right to exercise authority is doubtful, the board should not assume that authority,' citing Hopkins v. Special Road and Bridge District No. 4, 74 So. 310 (Fla. 1917); Accord: State ex rel. Greenberg v. Fla. State Bd. of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), and AGO 075-148.
Your letter also questions the authority of district school boards to self-insure for employee dishonesty. Rule 6A-1.692, F.A.C., provides in pertinent part:
 Each and every official or other person who is responsible in any manner for handling or expending school funds or property shall be adequately bonded at all times. . . .
 (3) It shall be the responsibility of the school board to provide for the bonding of any school employee who is responsible for school moneys or property. . . . The bond may be with a surety company authorized to do business in Florida, or with two (2) good and sufficient sureties. (Emphasis supplied.)
The specific authorization for this administrative rule is s. 237.191, F. S., which provides in pertinent part:
 237.191 Bonds required. — Each official and school board employee who is responsible in any manner for handling or expending school funds or property shall be adequately bonded at all times in the amounts and in a manner prescribed by regulations of the state board. The school board shall pay the premiums on all required bonds. . . . (Emphasis supplied.)
The American Heritage Dictionary of the English Language defines `bond' as, inter alia, `an insurance contract in which an agency guarantees payment to an employer in the event of unforeseen financial loss through the actions of an employee.' Cf. s.627.752, F. S., which stipulates state approval of surety insurers who execute fidelity or surety bonds for officers or employees of counties, municipalities, or subdivisions thereof.
Both s. 237.191, F. S., and Rule 6A-1.692, F.A.C., expresslyrequire that the above-described school board employees be adequately bonded (by way of a surety bond) at all times, while no provision whatever is made for self-insurance in this regard. As noted above, the statutory authorization for a district board to proceed in a particular way implies a duty not to proceed in any manner other than that which is authorized by law. Attorney General Opinion 075-256. See also State ex rel. Greenberg, supra; Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); and In re Advisory Opinion of Governor Civil Rights, 306 So.2d 520 (Fla. 1975);compare s. 240.375, F. S. (as amended in 1980), which expressly authorizes self-insurance and risk management programs for community colleges providing for the payment of costs of civil actions against their employees.
Significantly, two other provisions contained in ss. 1 and 2 of ch. 80-285, supra, expressly grant to the district board of trustees of a community college the option of self-insurance for payment of costs of civil actions against their employees (s. 240.375, F. S.) and for damage to community college property (s. 240.376, F. S.). Yet, the same Legislature omitted any mention and made no provision for district school boards to have the same option of self-insurance.
Prepared by: Anne Curtis Terry, Assistant Attorney General